Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| |
|---|
| JAN SUDNIK, <br><br> *Plaintiff*, <br><br> v. <br><br> BIOMET, INC.; BIOMET ORTHOPEDICS, LLC; BIOMET U.S. RECONSTRUCTION, LLC; BIOMET MANUFACTURING, LLC; ZIMMER BIOMET HOLDINGS, INC.; BIOMET FAIR LAWN, LLC; STEPHEN R. DAVIS; and LEGACY ORTHOPEDICS, INC.; <br><br> *Defendants*. |

Civil Action No. 18-14514

<u>OPINION</u>

<u>**John Michael Vazquez, U.S.D.J.**</u>

This matter concerns an allegedly defective metal hip replacement. D.E. 1, Ex. A at 29-52 (hereinafter "Compl."). Currently pending before this Court is Plaintiff's motion to remand the case to state court pursuant to 28 U.S.C. § 1447(c). D.E. 12. The Court reviewed the submissions in support and in opposition,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion to remand is granted.

---

[1] Plaintiff's brief in support of her motion will be referred to as "Pl. Br.," D.E. 12-1; Defendants' opposition will be referred to as "Def. Opp'n," D.E. 16. Plaintiff did not submit a reply brief.

## I. INTRODUCTION[2]

On April 16, 2008, Plaintiff Jan Sudnik underwent hip replacement surgery. Compl. ¶ 116. She was implanted with a Biomet Magnum metal on metal hip replacement. *Id.* During the next nine years, the Biomet Magnum hip replacement gradually released toxic metals into her body, slowly poisoning her. *Id.* ¶ 117. On October 3, 2017, Plaintiff underwent additional surgery to remove the source of the metal toxins. *Id.* ¶ 123.

On August 20, 2018, Plaintiff filed her Complaint in the Superior Court of New Jersey, Law Division, Bergen County, asserting four causes of action: (I) failure to warn in violation of the New Jersey Products Liability Act ("NJPLA"), N.J.S.A. § 2A:58C-1 *et seq.*; (II) manufacturing and design defect in violation of the NJPLA, N.J.S.A. § 2A:58C-1 *et seq.*; (III) common law fraud; and (IV) breach of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et seq. Id.* ¶¶ 125-152. Plaintiff brought these claims against the following Defendants: (1) Biomet, Inc.; (2) Biomet Orthopedics, LLC; (3) Biomet U.S. Reconstruction, LLC; (4) Biomet Manufacturing, LLC; (5) Zimmer Biomet Holdings, Inc.; (6) Biomet Fair Lawn, LLC; (7) Stephen R. Davis; and (8) Legacy Orthopedics, Inc. *Id.*

On October 1, 2018, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(a) on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(1). D.E. 1 at 1-16 (hereinafter "NOR") ¶ 4. Plaintiff is a citizen of New Jersey. Compl. at 1; NOR ¶ 5. Five of the eight Defendants (Biomet, Inc.; Biomet Orthopedics, LLC; Biomet U.S. Reconstruction, LLC; Biomet Manufacturing, LLC; Zimmer Biomet Holdings, Inc.) are either citizens of Indiana,

---

[2] When reviewing a motion to remand, the Court assumes as true all factual allegations in the Complaint. *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) ("Ruling on whether an action should be remanded . . . the district court must assume as true all factual allegations of the complaint.")

2

Delaware, or both states. Compl. ¶¶ 4, 7, 11; NOR ¶¶ 6-11. The citizenship of Defendant Biomet Fair Lawn LLC ("Fair Lawn") is disputed.[3] Legacy Orthopedics, Inc. ("Legacy") and Stephen R. Davis are both citizens of New Jersey. Compl. ¶ 7, 11; NOR ¶¶ 15, 16.

On October 31, 2018, Plaintiff moved to remand this case back to state court, arguing that Defendants Fair Lawn, Legacy, and Davis (1) ruin complete diversity, and/or (2) prevent removal because of the forum defendant rule. Pl. Br. at 1-6. Defendants argue that these parties do not ruin complete diversity or violate the forum defendant rule because Fair Lawn is not a New Jersey citizen and Legacy and Davis (and Fair Lawn, if applicable) were fraudulently joined. Def. Opp'n at 1-12.

## II. LEGAL STANDARD

The federal removal statute provides that "[e]xcept as otherwise provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). A district court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties about the current state of controlling substantive law in favor of the plaintiff." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Removal statutes are strictly construed against removal and all doubts are resolved in favor of

---

[3] Plaintiff argues that Fair Lawn is a citizen of New Jersey for jurisdictional purposes, Compl. ¶ 5; Pl. Br. at 6; and Defendants argue that Fair Lawn is an Indiana citizen for jurisdictional purposes, NOR ¶ 12; Def. Opp'n at 4.

remand. *See Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992).

Further, where federal jurisdiction is premised only on diversity of the parties, the forum defendant rule applies. *Encompass Ins. Co. v. Stone Manion Restaurant Inc.*, 902 F.3d 147, 152 (3d Cir. 2018). The rule provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* (quoting 28 U.S.C. § 1441(b)(2)).

## III. ANALYSIS

The Court first determines whether complete diversity exists before evaluating whether the forum defendant rule bars removal. As a preliminary matter, the Court must determine the citizenship of Fair Lawn. Plaintiff argues that Fair Lawn is a citizen of New Jersey for jurisdictional purposes because it has its principal place of business in New Jersey. Compl. ¶ 5; Pl. Br. at 6. Defendants argue that Fair Lawn, *a limited liability company*, is a citizen of Indiana because its sole member, Biomet, Inc., is an Indiana citizen. NOR ¶ 12; Def. Opp'n at 4. The Court agrees with Defendants.

For purposes of diversity jurisdiction, the citizenship of a limited liability company "is determined by the citizenship of its members." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). Alternatively, "a *corporation* shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). Here, Fair Lawn is an Indiana limited liability company with one member: Biomet, Inc. Compl. ¶ 5; NOR ¶ 12. Biomet Inc. is an Indiana corporation with its principal place of business in Indiana. Compl. ¶ 4; NOR ¶

4

6. Therefore, Fair Lawn is an Indiana citizen for diversity purposes and does not ruin complete diversity or run afoul the forum defendant rule.[4]

The Court next addresses the fraudulent joinder issue to determine whether Defendants Legacy and Davis may be excused for purposes of complete diversity. "The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006). "In a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Id.* at 216. Joinder is fraudulent if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Id.* (citing *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)). For a claim to lack a colorable basis, "it must be wholly insubstantial and frivolous." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992).

If the district court determines that the joinder was fraudulent, it can "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "If, however, the district court determines that it does not have subject-matter jurisdiction over the removed action because the joinder was not fraudulent, it must remand to state court." *Id.* (citing 28 U.S.C. § 1447(c)). In such a scenario, if

---

[4] The Court therefore does not reach Defendants' argument that Fair Lawn is immune from liability under the Biomaterials Access Assurance Act ("BAAA"), 21 U.S.C. §§ 1601-06.

5

warranted, the district court may also order payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. *Id.*

Here, Plaintiff, Defendant Legacy, and Defendant Davis are all citizens of New Jersey for purposes of diversity jurisdiction.[5] Plaintiff sued Defendants Legacy and Davis for violation of the NJPLA (Counts I and II), common law fraud (Count III), and violation of the NJCFA (Count IV). Compl. ¶¶ 125-152. Defendants argue that both Legacy and Davis were fraudulently joined as they are immune from suit under the NJPLA. NOR ¶¶ 37-45; Def. Opp'n at 7-12. Plaintiff claims that her allegations against Legacy and Davis are outside the scope of NJPLA immunity. Pl. Br. at 5.

The NJPLA "established the sole method to prosecute a product liability action such that only a single product liability action remains" in New Jersey. *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 596 (D.N.J. 2015) (citing *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398-99 (App. Div. 1991)) (internal quotations omitted). "The language of the [NJ]PLA represents a clear legislative intent that, despite the broad reach we give to the [NJ]CFA, the [NJ]PLA is paramount when the underlying claim is one for harm caused by a product." *Sinclair v. Merck & Co.*, 195 N.J. 51, 66 (2008). Here, the heart of Plaintiff's case is a harm caused by a product; Plaintiff alleges that Defendants' metal hip replacement gradually gave her metal poisoning and killed the tissue and bone surrounding her hip replacement. *Id.* ¶¶ 116-121. Therefore, Plaintiff's fraud claims are likely subsumed by her NJPLA claims.

---

[5] Plaintiff and Defendant Davis are both residents of New Jersey, Compl. at 1, ¶ 16; NOR ¶¶ 5, 7, and therefore citizens of New Jersey for diversity purposes. *See* 28 U.S.C. § 1332(a). Defendant Legacy is a New Jersey corporation, Compl. ¶ 15; NOR ¶ 11, and therefore a citizen of at least New Jersey for diversity purposes. *See* 28 U.S.C. § 1332(c)(1).

However, even so, Plaintiff can still recover from Defendants Davis and Legacy under the NJPLA. Defendants argue that "there is no reasonable possibility of any claim" against Davis and Legacy because they are sellers of the product who filed an affidavit correctly identifying the manufacturer of the product. Def. NOR ¶ 40; *see also* Def. Opp'n at 7 (arguing the same). Defendants cite the NJPLA, stating

> "in any product liability action against *a product seller*, the product seller may file an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death or damage" and "[u]pon filing the affidavit . . . the product seller ***shall be relieved of all strict liability claims*[.]**"

Def. NOR ¶ 40 (citing N.J.S. § 2A:58C-9) (emphasis in NOR); *see also* Def. Opp'n at 8 (citing the same). However, Defendants disregard the remainder of this quote, where the legislation states, "subject to subsection d. of this section." N.J.S. § 2A:58C-9; *see also* Def. Opp'n at 8 n.3 (quoting parts of subsection d. but disregarding it as inapplicable); NOR ¶ 44 (same). Subsection d. provides as follows:

> A product seller shall be liable if: (1) The product seller has exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage; or (2) The product *seller knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect* in the product which caused the injury, death or damage; or (3) The product seller created the defect in the product which caused the injury, death or damage.

*Id.* (emphasis added).

Here, Plaintiff specifically alleges that Defendants Legacy and Davis, as sellers of the product, knew or should have known the defect in the product which caused the injury to the Plaintiff given the expansive history of metal poisoning from the releveant implants, lack of

7

clinical studies on the Biomet Magnum, and widespread recalls. Compl. ¶¶ 22-114. Specifically, Plaintiff alleges as follows:

> [Davis] was responsible for educating orthopedic surgeons about Biomet hip replacement systems and the advantages, benefits, indications, . . . surgical implantation, . . . and addressing any post-surgical questions or concerns[;]
>
> [Davis and Legacy] selected the components and tools to have present in the operating room when [Plaintiff] was surgically implanted with the Biomet Magnum[;]
>
> Defendants failed to inform physicians and patients in the United States of [a Turku University] study, that . . . discouraged use of Biomet Magnum hip replacements, [and demonstrated] the need for physicians to screen their patients for [a]dverse [r]eaction to [m]etal [d]ebris, [but Defendants] instead continued to promote the Magnum for implantation into the bodies of patients in the United States[; and]
>
> Defendants have failed to disclose to orthopedic surgeons or the public in the United States that the Magnum hip replacement was recalled in Australia and that the Australian government issued a "Hazard Alert" regarding the Magnum[;]

*Id.* ¶¶ 9, 14, 76, 94. Given these allegations, it is more than colorable that Defendants Davis and Legacy fit into the second exception for sellers who are not immune under the NJPLA. Thus, contrary to Defendants' assertion, Plaintiff's claims against Davis and Legacy are not clearly frivolous. The Court finds that Davis and Legacy were not fraudulently joined, and therefore complete diversity does not exist between the parties.[6] This Court does not have jurisdiction over the matter and remands the case to state court.

---

[6] As a result, the Court does not reach whether the forum defendant rule applies.

## IV. CONCLUSION

In sum, the Court grants Plaintiff's motion to remand, D.E. 12. This action is remanded to the Superior Court of New Jersey, Law Division, Bergen County. An appropriate Order accompanies this Opinion.

Dated: May 7, 2019

　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　John Michael Vazquez, U.S.D.J.